## CUMMINGS *v.* NATIONAL BANK.

The Constitution of Ohio declares that " laws shall be passed taxing by a·uniform rule all moneys, credits, investments in bonds, stocks, joint-stock companies, or otherwise; and also all the real and personal property, according to its true value in money." And the legislature has passed laws providing separate State boards of equalization for real estate, for railroad capital, and for bank shares, but there is no State board to equalize personal property, including all other moneyed capital. The equalizing process as to all other personal property and moneyed capital ceases with the county boards. Throughout a large part of Ohio, including Lucas County, in which A., a national bank, is located, perhaps all over the State, the officers charged with the valuation of property for purposes of taxation adopted a settled rule or system, by which real estate was estimated at one-third of its true value, ordinary personal property about the same, and moneyed capital at three-fifths of its true value. The State board of equalization of bank shares increased the valuation of them to their full value. A. brought its bill against the treasurer of that county, praying that he be enjoined from collecting a tax wrongfully assessed on those shares. *Held*, 1. That the statute creating

the board for equalizing bank shares is not void as a violation of the Constitution of Ohio, because if the local assessors would discharge their duty by assessing *all property* at its actual cash value the operation of the equalizing board would work no inequality of taxation, and a statute cannot be held to be unconstitutional which in itself does not conflict with the Constitution, because of the injustice produced by its maladministration. 2. That the rule or principle of unequal valuation of different classes of property for taxation, adopted by local boards of assessment, is in conflict with that Constitution, and works manifest injustice to the owners of bank shares. 3. That when a rule or system of valuation for purposes of taxation is, adopted by those whose duty it is to make the assessment, which is intended to operate unequally, in violation of the fundamental principles of the Constitution, and when this principle is applied not solely to one individual, but to a large class of individuals or corporations, equity may properly interfere to restrain the operation of the unconstitutional exercise of power. 4. That the appropriate mode of relief in such cases is, upon payment of the amount of the tax which is equal to that assessed on other property, to enjoin the collection of the illegal excess.

APPEAL from the Circuit Court of the United States for the Northern District of Ohio.

The facts are stated in the opinion of the court.

*Mr. J. K. Hamilton* for the appellant.

*Mr. Wager Swayne* for the appellee.

MR. JUSTICE MILLER delivered the opinion of the court.

The Merchants' National Bank of Toledo, a banking association organized under the national banking law of the United States, brought its bill in equity to enjoin the treasurer of Lucas County, within the limits of which it is established, from collecting a tax wrongfully assessed against the shares of its stockholders, payment of which was demanded of the bank. The feature of the assessment to which the complainant objects is that in the valuation of the shares of the bank for the purpose of taxation they were estimated at a much larger sum in proportion to their real value than other property, real and personal, in the same city, county, and State, and that this was done under a statute of the State, and by a rule or system deliberately adopted by the assessors for the avowed purpose of discriminating against the shares of all bank stock. Though there is in the argument of counsel an attempt to invoke the aid of the act of Congress relating to the taxation of the shares of the national banks, we are unable to see, either in the origi-

nal or supplemental bill, any sufficient allegation on that subject. One clause of the bill asserts that the law of the State (which is the principal subject of complaint), and the tax and assessments under it, are in violation of the Constitution of Ohio and the act of Congress; but the vice charged against the assessment is that it is " three times the proportionate amount which is charged to real property, moneys, and credits listed for taxation in said county of Lucas and charged upon said duplicate."

The standard of comparison in the act of Congress is, " other moneyed capital in the hands of individual citizens of the State." We do not think we are called on to decide whether a tax which is assailed on the ground of violating that statute is void for that reason until the case, by positive averment, or by necessary implication of such averment, is shown to be. within the prohibitory clause.

But the bank has the same right under the laws and Constitution of Ohio to be protected against unjust taxation that any citizen of that State has, and by virtue of its organization under the act of Congress it can go into the courts of the United States to assert that right. If, therefore, the assessment on its shares was a violation of the constitutional provision of that State concerning uniformity of taxation, the Circuit Court had jurisdiction of that question, concurrent with the State courts, and we must review its decision.

It is, however, manifest from the form of the bill in this case and the tenor of the argument in this court, that its object is to have a decision that the State statute of 1876, which provides specifically for taxation of bank shares, and for nothing else, is void as a violation of the Constitution of that State, as the case of *Pelton* v. *National Bank* (*supra*, p. 143) against the treasurer of Cuyahoga County by the bank at Cleveland is designed to test the subsequent statute of 1877, which is a substitute for that of 1876.

The two cases were advanced on our docket out of their order, and heard at the same time by this court, on the ground that they both involved the revenue law of the State. We have expressed in that case the reasons which induced us to avoid deciding that question, if it can be done without prejudice to

the rights of the parties involved, and we shall see as we progress in the examination of this case whether it can be done.

But we must dispose of some preliminary questions, the first of which is the supposed incapacity of the bank to sustain this or any other action for the alleged grievance, because, as the persons taxed are the individual shareholders, the damage, if any, is theirs, and they alone can sue to recover for it or to prevent the collection of the tax.

The statutes of Ohio under which these taxes are assessed require the officers of the bank to report to the county auditor who makes the original assessment, the names of all its stockholders, their places of residence, and the amount held by each of them, and all the other facts necessary to a fair assessment.

It also authorizes the bank to pay the tax on the shares of its stockholders and deduct the same from dividends or any funds of the stockholders in its hands or coming afterwards to its possession, and it forbids the bank to pay any dividends on such stock, or to transfer it or permit it to be transferred on their books, so long as the tax remains unpaid.

In *National Bank* v. *Commonwealth* (9 Wall. 353), we held that a statute of Kentucky, very much like this, which enabled the State to deal directly with the bank in regard to the tax on its shareholders, was valid, and authorized a judgment against the bank which refused to pay the tax. It is true, the statute of Kentucky went further than the Ohio statute, by declaring that the bank *must* pay the tax, while the latter only says it may. But the Ohio statute, by the remedies it provides, places the bank in a condition where it must pay the tax, or encounter other evils of a character which create a right to avoid them by instituting legal proceedings to ascertain the extent of its responsibility before it does the acts demanded by the statute.

It is next suggested that since there is a plain, adequate, and complete remedy by paying the money under protest and suing at law to recover it back, there can be no equitable jurisdiction of the case.

The reply to that is that the bank is not in a condition where the remedy is adequate. In paying the money it is acting in a fiduciary capacity as the agent of the stockholders, — an agency created by the statute of the State. If it pays an unlawful tax

assessed against its stockholders, they may resist the right of the bank to collect it from them. The bank as a corporation is not liable for the tax, and occupies the position of stakeholder, on whom the cost and trouble of the litigation should not fall. If it pays, it may be subjected to a separate suit by each shareholder. If it refuses, it must either withhold dividends, and subject itself to litigation by doing so, or refuse to obey the laws, and subject itself to suit by the State. It holds a trust relation which authorizes a court of equity to see that it is protected in the exercise of the duties appertaining to it. To prevent multiplicity of suits, equity may interfere.

But the statute of the State expressly declares that suits may be brought to enjoin the illegal levy of taxes and assessments or the collection of them. Sect. 5848 of the Revised Statutes of Ohio, 1880; vol. liii. Laws of Ohio, 178, sects. 1, 2. And though we have repeatedly decided in this court that the statute of a State cannot control the mode of procedure in equity cases in Federal courts, nor deprive them of their separate equity jurisdiction, we have also held that, where a statute of a State created a new right or provided a new remedy, the Federal courts will enforce that right either on the common law or equity side of its docket, as the nature of the new right or new remedy requires. *Van Norden* v. *Morton*, 99 U. S. 378. Here there can be no doubt that the remedy by injunction against an illegal tax, expressly granted by the statute, is to be enforced, and can only be appropriately enforced on the equity side of the court.

The statute also answers another objection made to the relief sought in this suit, namely, that equity will not enjoin the collection of a tax except under some of the well-known heads of equity jurisdiction, among which is not a mere overvaluation, or the illegality of the tax, or in any case where there is an adequate remedy at law. The statute of Ohio expressly provides for an injunction against the collection of a tax illegally assessed, as well as for an action to recover back such tax when paid, showing clearly an intention to authorize both remedies in such cases.

Independently of this statute, however, we are of opinion that when a rule or system of valuation is adopted by those

whose duty it is to make the assessment, which is designed to operate unequally and to violate a fundamental principle of the Constitution, and when this rule is applied not solely to one individual, but to a large class of individuals or corporations, that equity may properly interfere to restrain the operation of this unconstitutional exercise of power. That is precisely the case made by this bill, and if supported by the testimony, relief ought to be given.

Art. 12, sect. 2, of the Constitution of the State of Ohio declares that " laws shall be passed taxing by a uniform rule all moneys, credits, investments in bonds, stocks, joint-stock companies, or otherwise ; and also all the real and personal property, according to its true value in money ; " and sect. 3, that "the General Assembly shall provide by law for taxing the notes and bills discounted or purchased, moneys loaned, and all other property, effects, or dues of every description — without deduction — of all banks now existing, or hereafter created, and all bankers, so that all property employed in banking shall bear a burden of taxation equal to that imposed on the property of individuals."

In construing this provision of the Constitution the Supreme Court of Ohio has said that " taxing by a uniform rule requires uniformity not only in the *rate* of taxation, but also uniformity in the *mode of the assessment* upon the taxable valuation. Uniformity in taxing implies equality in the burden of taxation, and this equality of burden cannot exist without uniformity in the mode of the assessment, as well as in the rate of taxation. But this is not all. The uniformity must be coextensive with the territory to which it applies. If a State tax, it must be uniform over all the State; if a county, town, or city tax, it must be uniform throughout the extent of the territory to which it is applicable. But the uniformity in the rule required by the Constitution does not stop here. It must be extended to *all property* subject to taxation, so that all property must be taxed alike, *equally*, which is taxing by a uniform rule." *Exchange Bank of Columbus* v. *Hines*, 3 Ohio St. 15.

We are not aware that this decision has ever been overruled. It will be seen also that the Constitution requires all property to be taxed " according to its true value in money." It is said

that the various statutes for assessing the taxes are all based upon this principle of valuation, and a statute of May, 1868, is cited in the brief as enacting that all property of every description within the State shall be entered for taxation at its true money value.   If this principle, so clearly embodied in the Constitution as expounded by the Supreme Court, had been made the rule of action by those who have charge of the administration of the laws for assessing taxes, there could be no place for the complaint of the bank.

The State, however, by her legislation has adopted a system of valuation of property into which we must look for a moment to enable us to appreciate the effect of the evidence as to the actual valuation of which complaint is made in this case.

Instead of having all property subject to taxation valued by one commission or authorized body, there are at least four different bodies acting independently of each other in regard to as many different classes of property in the process of final estimate of values for taxation.

The first of these concerns real estate, which is valued once in each decade, that valuation remaining unchanged during the whole ten years, except that what is called the new constructions of each year is added to the original sum.   The assessments of real estate by the district assessors in the county, and the ward assessors in the large cities, is first submitted to a county or city board of equalization, and this again to a State board of equalization, to be elected once in ten years by the electors of each senatorial district.   Of this board the auditor of state is a member.   The functions of this final board seem to be to increase or decrease the county valuations of real estate returned to them, according as they are found to be above or below the true money value of the property.   But in doing this they only act on a county or city valuation as a whole, and not on the particular pieces of property assessed, and they cannot reduce or increase the entire valuation for the State more than twelve and a half per cent of the aggregate.

Personal property (other than bank shares and railroad property) and the new constructions in real estate are assessed annually by district and ward assessors in the counties and cities, and their assessment is returned to a county or city

board of equalization, and we are not aware that this valuation is subject to any further equalization or submitted to any further correction. This assessment, of course, includes all personal property, money, credits, and investments of capital other than those in banks and railroads. In regard to railroads, there is a submission of all of them to a State board of equalization, which finally passes upon the assessments of the counties. In reference to banks, which are first assessed by the county auditor, there is also a State board of equalization, whose function is limited to equalizing throughout the State the valuation of *the shares of incorporated banks*.

We thus see that one board of equalization has charge of the valuation of the real estate of the whole State once in every ten years, another has charge of the valuation of railroad property every year, and a third has charge of the valuation of shares of incorporated banks every year, and the amount fixed by these State boards is in every instance the final basis of taxing that species of property for State and county purposes.

We are asked to decide that, as to this final board of equalization of bank shares, whose function is to equalize the valuation of those shares, *as among themselves*, throughout the State, with no power to consider the valuation of real estate which comes before another board only once in ten years, or other personal property and invested capital which never comes before any State board, that its operations must necessarily produce inequality in valuation as it regards other property, and is therefore void, as in conflict with the State constitutional rule of uniformity, and with the third section of the same article of the Constitution, declaring " that all property employed in banking shall bear a burden of taxation equal to that imposed on the property of individuals."

But there are two reasons why we cannot so hold. First, It might be that in every instance the result would be the valuation of bank shares at a lower ratio in proportion to its real value than that of any other property, and therefore plaintiff would have no ground of complaint. And, secondly, what is more important, if these original valuations and equalizations are based always, as the Constitution requires, on the actual money value of the property assessed, the result, except as it

might be affected by honest mistakes of judgment, would necessarily be equality and uniformity, so far as it is attainable.   So that while it may be true that this system of submitting the different kinds of property subject to taxation to different boards of assessors and equalizers, with no common superior to secure uniformity of the whole, may give opportunity for maladministration of the law and violation of the principle of uniformity of taxation and equality of burden, that is not the necessary result of these laws, or of any one of them; and a law cannot be held unconstitutional because, while its just interpretation is consistent with the Constitution, it is unfaithfully administered by those who are charged with its execution. Their doings may be unlawful while the statute is valid.

The evidence, we are compelled to say, shows this to be true of the case before us.

It may be summed up in the statement, that the assessors of real property, the assessors of personal property, and the auditor of Lucas County, in which is the city of Toledo, concurred in establishing a rule of valuation by which real and personal property, except money, was assessed at one-third of its actual value, and money or invested capital at six-tenths of its value, and that the assessment of the shares of incorporated banks, as returned by the State board of equalization for taxation to the auditor of Lucas County, was fully equal to the selling prices of said shares and to their true value in money.   This is shown by the testimony of four or five district assessors, by the auditor of the county for the year 1876, and for several previous years, who had been long an employé in that office. It is also shown by this witness that at one time the auditor of Lucas County held a conference with the auditors of the counties of Fulton, Williams, Defiance, Henry, Paulding, Ottawa, Wood, Sandusky, Seneca, and Van Wirt, and that the rule by which property was valued in Lucas was the result of this conference, and was to be applied in all these counties. The district assessors, whose duty it was to make this primary valuation of all personal property (except bank stocks and railroad property), also testify that for the year 1876 they had a meeting, and adopted that rule of valuation as their guide, and so applied it.   All this is uncontradicted.   Nor is there any

question that while the auditor probably returned the bank shares of Toledo at six-tenths of their value, or thereabouts, the State board of equalization increased it so that, as the cashier of this bank swears, its shares were assessed at their full cash value.

The testimony before us in the case argued with this shows that the same rule of valuation was adopted in Cuyahoga County with the same effect on the shares of the incorporated banks of Cleveland. It probably pervades the system of assessment for the entire State of Ohio, and may have caused the necessity of boards of equalization quite as much as mistakes of judgment or other sources of inequality which these boards are designed to remedy. But while these separate boards, acting upon returns of different classes of property, and limited in each case to equalizing the value as between the same class in different counties, have no common or united action among themselves, and no common power to equalize the valuation of the different classes of property in relation to each other, it is obvious that their capacity to produce the uniformity which the Constitution was intended to effect is very small indeed. They have no power at all to affect the valuation of real estate except once in ten years. They have no power over the valuation of personal property, including all money capital, except bank shares, as it is fixed by the county and city boards; and these being beyond their control, the effort of the State board to raise the assessment of the shares of banks to their value in money only increases the glaring inequality arising from the valuation of the county boards.

It is proper to say, in extenuation of the rule of primary valuation of different species of property developed in this record, that it is not limited to the State of Ohio, or to part of it. The constitutions and the statutes of nearly all the States have enactments designed to compel uniformity of taxation and assessments at the actual value of all property liable to be taxed. The phrases " salable value," " actual value," " cash value," and others used in the directions to assessing officers, all mean the same thing, and are designed to effect the same purpose. Burroughs, Taxation, p. 227, sect. 99. But it is a matter of common observation that in the valuation of real estate this rule is habitually disregarded.

And while it may be true that there has not been in other States such concerted action over a large district of country by the primary assessors in fixing the precise rates of departure from actual value, as is shown in this case, it is believed that the valuation of real estate for purposes of taxation rarely exceeds half of its current ˉsalable value.ˉ If we look for the reason for this common consent to substitute a custom for the positive rule of the statute, it will probably be found in the difficulty of subjecting personal property, and especially invested capital, to the inspection of the assessor and the grasp of the collector.    The effort of the land-owner, whose property lies open to view, which can be subjected to the lien of a tax not to be escaped by removal, or hiding, to produce something like actual equality of burden by an undervaluation of his land, has led to this result.    But whatever may be its cause, when it is recognized as the source of manifest injustice to a large class of property around which the Constitution of the State has thrown the protection of uniformity of taxation and equality of burden, the rule must be held void, and the injustice produced under it must be remedied so far as the judicial power can give remedy.    The complainant having paid to defendant, or into the Circuit Court for his use, the tax which was its true share of the public burden, the decree of the Circuit Court enjoining the collection of the remainder is

*Affirmed.*

MR. CHIEF JUSTICE WAITE dissenting.

I feel compelled to withhold my assent to this judgment. There can be no doubt that the shares of this bank were overvalued as compared with other property in the city; but if a State provides by a valid law for the valuation of property for taxation, and furnishes appropriate tribunals for the correction of errors before a tax is assessed if complaint is made, I think it is not within the power of a court of equity to enjoin the collection of the tax simply because of an inequality in valuation, — and this as well when the error arises from the adoption by the valuing officers of a wrong rule applicable to many cases, as from a mistake in judgment as to a single case.    The valuation as finally fixed by the proper officers, or equalizing

board, under the law, is, in my opinion, conclusive when there has been no fraud. As it seems to me, this case comes within the operation of this principle.