Dundee Mortgage & Trust Investment Co. *v.* School-Dist. No. 1 and others.

*(Circuit Court, D. Oregon.   August 18, 1884.)*

1. **Uniformity of Assessment and Taxation—Special Law on Such Subject.**
   An act which provides for the taxation of mortgages on land in no more than one county, there being mortgages on land in more than one county, is void for want of the uniformity required by section 1 of article 9 of the constitution of the state, and also because it is contrary to section 23 of article 4 of said constitution, which forbids special legislation on that subject.

2. **Taxation of Mortgages.**
   The act of 1882, Sess. Laws, 64, is the first and only act providing for the taxation of mortgages as things or property; but prior to that time a solvent debt, whether secured by mortgage or not, was taxable as personal property.

3. **Unconstitutional Provision in Act.**
   When an act contains an unconstitutional provision which renders it void, and the act can stand and be executed without it, according to the general purpose of the legislature, such clause may be stricken out by the court, and the act considered as if it had never been inserted; but not otherwise.

4. **Tax—Illegal for Want of Uniformity.**
   A tax may be illegal for want of uniformity that is the necessary consequence of the law providing for it, or the misconduct of those charged with its administration; but so long as such uniformity is not the direct result of the law it cannot be held invalid on account of it, and the remedy, if any, must be confined to the illegal proceeding under it.

5. **Statute—When Special.**
   A "special" act affects a part only of the subject to which it relates, and whether an act is considered "public" or "private" is not relevant to the question of whether it is "special" or "general."

Suit for an Injunction to Restrain the Collection of a Tax.

*William H. Effinger*, for plaintiff.

*R. S. Strahan* and *John Burnett*, for defendants.

DEADY, J. This suit is brought to restrain sundry tax collectors in this state from enforcing the collection of a tax levied upon sundry mortgages belonging to the plaintiff, under the act of October 26, 1882, commonly called "The Mortgage Tax Law," by the sale of the same. The cause was before this court on an application for a provisional injunction against three of the defendants, then served with a rule to show cause, or appearing thereto, why the same should not be allowed. 19 FED. REP. 359. The application was heard as upon a demurrer to the bill, and upon the affidavit of the defendant Sears. On March 6, 1884, the injunction was allowed upon the ground that the act aforesaid, under which the plaintiff's mortgages were assessed, was void for want of the uniformity required by section 1 of article 9 of the constitution, and because it was passed contrary to section 23 of article 4 of the constitution, which forbids the passage of a "special" act "for the assessment and collection of taxes." Since then, the defendants Sol. King, George Humphrey, J. R. Campbell, H. Holman, and B. Forward have appeared by their counsel, and on May 3d filed a joint demurrer to the bill; and now, by the stipulation of counsel, the issue made by said demurrer is submitted to the court for determination, without further argument for the plaintiff and for the defendants, upon the brief for the respondents in the case of *Crawford* v. *Linn Co.*, at the March term of the supreme court of the state. The grounds of the demurrer are these: (1) This court has no jurisdiction of the subject of the suit, in that it does not appear that the corporation or stockholders of the plaintiff are citizens or subjects of Great Britain; (2) there is no question arising under the constitution or laws of the United States presented herein; (3) the act of the legislative assembly, referred to in the plaintiff's bill of complaint, is not in conflict with the constitution of the state of Oregon.

As to the first objection the brief is silent. But upon examination of the bill I find that it is not alleged therein, in so many words, that either the plaintiff or its stockholders are citizens or subjects of Great Britain, but only that the former is "resident" of the burg of Dundee, in Scotland. But it is also alleged that the plaintiff is a "foreign corporation duly incorporated under the laws of Great Britain;" and this, in legal effect, is the same as saying that it is a subject of Great Britain. For the purpose of jurisdiction in the national courts, the members or stockholders of a corporation are conclusively presumed to be citizens of the state under whose laws it is created or formed, and in which it has its corporate existence, and a suit by or against such corporation is therefore presumed to be a suit by or against citizens of the state which created it. *O. & M. Ry. Co.* v. *Wheeler*, 1 Black, 295, and cases there cited; *Cowles* v. *Mercer Co.* 7 Wall.

121; *Ry. Co.* v. *Whitton,* 13 Wall. 283.   And this rule is upon principle as applicable to corporations formed under the laws of a foreign country, as under the laws of any of the states of the Union, which are, so far, foreign to one another.   A corporation formed under the laws of Great Britain is necessarily resident therein, and its members are presumed to be subjects thereof.

The second objection, assuming it to be true in statement, as it is not, is altogether immaterial.   The jurisdiction of this court over this controversy is fully authorized by the character of the citizenship of the parties without reference to the subject-matter.   The suit being between an alien on the one hand, and citizens of a state of this Union on the other, the court has jurisdiction of the controversy, let the questions involved therein be what they may.   Article 3, § 2, U. S. Const. Act of 1875, § 1, (18 St. 470.)

In *Cummings* v. *Nat. Bank,* 101 U. S. 153, the supreme court took jurisdiction of a suit between a national bank and a county treasurer to restrain the latter from collecting a tax from the former, under the laws of Ohio, on the ground that the bank, being organized under an act of congress, had a right to sue in the national courts, and did restrain the collection of the tax on the ground that it was imposed in violation of the rule of uniformity prescribed by the constitution of the state, in that the stock of the bank was assessed at its full cash value, while the real and other property of the county was deliberately assessed at a much less value.

But there are two questions made in the case that arise under the constitution of the United States, either of which is sufficient, so far, to give this court jurisdiction of the suit, without reference to the citizenship of the parties; and these are:  (1) Does the act of 1882 impair the obligation of the contract between the plaintiff and its debtors, contrary to section 10 of article 1 of the constitution of the United States? and (2) said act being unconstitutional and void for want of uniformity, and because the same is special, does not the enforcement of it by the sale of the plaintiff's debts and mortgages so far deprive it of its property without due process of law, contrary to the fourteenth amendment?   The first of these questions was answered, on the application for the injunction, in the negative, and the second in the affirmative.

The third objection involves the question of the validity of the act of 1882.   The principal point made in the brief under this head, that requires attention, is this: Admitting that the act of 1882, taken by itself, does not provide for a "uniform and equal rate of assessment and taxation" of all mortgages, as required by the constitution, (article 9, § 1,) yet, when considered in connection with the existing law on that subject, and as a part of it, it is not open to that objection.   The argument in support of this proposition is substantially this:  By the law of 1854, in force when the act of 1882 went into effect, all "personal property," including "all debts due or to be-

come due from solvent debtors, whether on account, contract, note, mortgage, or otherwise," was "subject to taxation in the manner provided by law." Or. Laws, p. 748, §§ 1, 3; Id. p. 752, § 17; Sess. Laws 1876, p. 69. And as the law of 1882 did not include debts secured by two-county mortgages, they continued taxable, notwithstanding, under the old law, at "their true value in cash," as the personal property of the owner in the county where he resides, and therefore there is no want of uniformity in the result. This point was not made on the hearing of the application for the injunction. The argument in support of it is plausible; but, upon careful consideration, I do not think it is sound. The uniformity and equality which the constitution enjoins on the legislature the duty of providing for, is a "uniform and equal rate of assessment and taxation" of all personal property not exempt therefrom. And this requires that all property liable to taxation within the state, county, town, or other taxing district shall be taxed equally; that is, shall be assessed or valued for taxation by the same rule and method, and pay the same rate on such valuation. As was said by the supreme court in *Mumford* v. *Sewell*, 11 Or. (Daily Oregonian, May 25, 1883,) the act of 1882 was the first legislation providing for the taxation of mortgages in this state, and it is confined by its terms to mortgages on land in only one county. It being admitted that there are mortgages on land in more than one county in the state, the law lacks uniformity; and it is not only wanting in uniformity—it does not even profess or seek to obtain it, but the contrary. It does not include, as it should, all mortgages; and it distinguishes between those included and excluded, by a circumstance so irrelevant and adventitious that it can never be the basis of any just or reasonable classification for the purpose of taxation.

Neither is it true, as assumed by the argument for the present defendants, that mortgages are taxed under the old law. That law only applies to solvent "debts," whether "on account, contract, note, mortgage, or otherwise." I know there is a *dictum* in *Poppleton* v. *Yamhill Co.* 8 Or. 342, to the effect that "notes and mortgages should be regarded as personal property, and subject to assessment for taxes." But the question before the court was simply whether or not the county authorities had acted legally in listing certain "debts" due the plaintiff on note and mortgage for taxation. There was no attempt to assess a note or mortgage specifically as a thing of property, but only the debt or chose in action evidenced thereby; and the phrase, "notes and mortgages," is evidently used by the court to signify the debts which they represent, and which alone the statute made taxable. I think it is common knowledge that the act of 1854 was never understood to include either notes or mortgages as taxable property, but only the solvent debts evidenced by them, and that no mortgage was ever listed as such for taxation in this state prior to the act of 1882. So that, taking the law as it stands, and giving effect to the old law

so far as it is not displaced by the new one, the statute does not provide for the taxation of all mortgages in the state for state purposes, or in any county thereof for county purposes, but only for such as may chance to be on land in no more than one county.   But while it is not distinctly asserted in this argument, it is silently assumed by it, that the taxation of a debt under the old law, that happens to be secured by a mortgage, is equivalent to the taxation of said mortgage under the act of 1882.   But, if this is so, what occasion was there for the passage of the act?   None whatever.

But admitting that the old law, in taxing a debt "due on a mortgage," imposes the same burden on the creditor that it would if it had taxed the mortgage, and that the difference between taxing a debt "due on a mortgage" and taxing the latter for the value of the former is a merely nominal one, still the marked differences in the mode of the assessment, if not the rule of valuation, between the two laws, make it very doubtful whether a mortgage assessed under the one is uniformly and equally taxed with one assessed under the other.   A debt or mortgage assessed under the old law is valued by the assessor of the county where the creditor lives.   He is selected by the local influence of which the creditor is a part, and subject to all the friendly and favoring impulses and influences which naturally arise out of near neighborship, common interest, and mutual dependency.   And if the creditor is dissatisfied with the action of the assessor, he may appeal to a local board of equalization, easy of access, and subject to the same impulses and influences.   And he can pay his taxes in the county where he lives, and have the benefit in his business or property of their expenditure in his vicinity.   But in the case of a mortgage assessed for taxation under the new law, all this is liable to be reversed.   The mortgage is valued by the assessor of the county where the debtor lives, and the taxes must be paid there.   In a word, all the local influences and prejudices which are so liable to affect the assessment of the mortgage and the collection of the tax thereon, are almost certain to operate unfavorably to the absent and voteless creditor.   Taking human nature as we find it, it is morally certain that one and two county mortgages will not be uniformly and equally assessed and taxed under circumstances and influences so diverse as these.   But it may be that these inequalities are not the necessary result of the law, and are directly attributable to its maladministration or human infirmity, and therefore it cannot be held unconstitutional on account of them.   As was said by Mr. Justice MILLER in *Cummings* v. *Nat. Bank, supra,* 161, the doings of those charged with the administration of the statute may be unlawful, while the law itself is valid; as where the law requires all property to be assessed at its true cash value, and the officers of a county charged with the administration of this law purposely and generally assess certain property —for instance, the land—at half its cash value, and certain other property—for instance, mortgages—at par or their full cash value.

This want of uniformity cannot be charged to the law, but to the misconduct of those who administer it; and the remedy, as was held in *Cummings* v. *Nat. Bank, supra,* is not against the law, but its illegal adminstration. In such case the owner of the mortgage may have the collection of one-half the tax levied on his mortgage judicially restrained, and thereby secure uniformity in the taxation of the land and mortgage. Yet it is apparent that the legislature does not obey the spirit of the injunction of the constitution when it provides, for the taxation of mortgages in a manner which, while it is uniform and just in letter and form, will, as every one at all conversant with the subject knows, result otherwise in practice.

But mortgages which are assessed in different counties are also liable to pay different rates of local taxation. For instance: A. lives in Clackamas county and owns a mortgage on land in Yamhill and Polk counties. Being a two-county mortgage, it is assessed to him in Clackamas county, if at all, and pays the county road and school tax levied in that county. B. lives in the same county, and owns a mortgage on land in Yamhill county. Being a one-county mortgage, it is assessed and pays taxes in the latter county; and it is therefore morally certain that it will pay a different rate of local taxation from A.'s mortgage on land in the same county. For this want of uniformity, supposing that two-county mortgages are taxable at all, I think the law must be held responsible. The fault is the necessary result of the law and not its administration. The difference in the rate of local taxation in the several counties of the state is as well known as the difference in their size, and is as inevitable as the difference per acre in the yield of grain within their borders. And still, until it appears that the local rate is greater instead of less in Yamhill than in Clackamas, B. may have no right to complain of this want of uniformity, because he is not injured by it.

But, waiving these suggestions, I see no reason to conclude that there is or ever was any law of this state providing for the taxation of mortgages except the act of 1882, and that is expressly limited to mortgages on land "in no more than one county," and is therefore void for want of uniformity.

But it is also claimed in defendant's brief that admitting the act of 1882 "exempts" two-county mortgages from taxation, the exemption is void and the law valid; citing *People* v. *McCreery,* 34 Cal. 432; *People* v. *Gerke,* 35 Cal. 678, and *People* v. *Black Diamond Coal M. Co.* 37 Cal. 54. The latter two cases merely affirm the decision made in the first one. In that the court held, reversing the cases of *People* v. *Coleman,* 4 Cal. 46, and *High* v. *Shoemaker,* 22 Cal. 363, that under the constitution of the state, which requires that "taxation shall be equal and uniform throughout the state," and that "all property in the state shall be taxed in proportion to its value," the legislature had no power to exempt private property from taxation. By the general revenue act, then (1867) in force, it was provided that "all prop-

erty of ever kind and nature whatever within the state shall be subject to taxation, except" certain property therein specified, as mining claims and growing crops. The defendant resisted the collection of a tax levied under this law on property not within the exemptions, on the ground that the whole act was unconstitutional and void on account of the exemptions. But the court held that the exemption being void was no part of the act, and that it must be read as if that provision had not been inserted in it. To have held otherwise would have left the state wholly without a revenue act or revenue, and doubtless the argument *ab inconvenienti* had weight with the court. But that is not this case by any means. The act of 1882 does not deal with two-county mortgages, nor "exempt" them from its operation; it relates simply to one-county mortgages; and if two-county mortgages are not affected by it, it is not because it exempts them from its operation, but for the reason they are not included in it. It is a case, then, not of an illegal "exemption," but an "omission" or failure to provide. If the act had expressly or in effect first provided for the taxation of all mortgages, and then declared that two-county mortgages should be exempt from its operation, the case would be parallel with *People* v. *McCreery*. And upon the law of that case the court might declare the exemption void, and thus leave the act to have effect according to its terms upon all mortgages. But in a case like this, where the unconstitutionality of an act arises from an "omission" rather than an insertion, there is nothing to strike out or declare void, unless it be the whole act. A court may declare a clause in an act invalid and leave the act to stand without it, if the operation does not nullify or render nugatory what remains; but it cannot put words into an act which the legislature has omitted—and, presumably, designedly so—for the purpose of making it valid. That would be legislation—making the law rather than declaring it. In other words, the power to strike an unconstitutional clause out of an act is a very different thing from the power to insert one in an act to make it constitutional. The one is judicial, the other legislative.

But it is also suggested in the brief for the defendants that the words of description or limitation—"in no more than one county"—by which the operation of the act is restrained or confined to one-county mortgages, may be stricken out as unconstitutional, and then the act would in terms apply to all mortgages, and therefore not be obnoxious to the charge of the want of uniformity. But that would defeat the purpose of the legislature, which was to tax one-county mortgages and no other. Besides, the method of proceeding under the act is not adequate to the assessment of two-county mortgages, and therefore it could not be enforced against them, and would still remain what the legislature intended it should be—an act for the taxation of one-county mortgages. The act would still contain the positive direction (section 2) that a mortgage for the security of a debt shall be assessed in the county where the land lies; and this

itself would prevent the application of the act to a mortgage upon land in more than one county.

But, passing the question of uniformity, this act is clearly void because it was passed in violation of section 23 of article 4 of the constitution, which expressly forbids the passage of a "special or local" law "for the assessment and collection of taxes." It is not necessary to add to what was said on this subject in the former opinion, as the brief only refers to *Allen* v. *Hirsch,* 8 Or. 412, which I regard as overruled by *Manning* v. *Klippel,* 9 Or. 367, so far as it decides that a public statute cannot be a "special or local" one within the meaning of section 23 of article 4 of the constitution of the state. A "special" act relates to a part and not the whole,—as one-county mortgages, and not all mortgages; and whether it is also considered a "public" or "private" one, is altogether immaterial and irrelevant. Under the constitution of this state all statutes are "public" ones, unless otherwise declared in the body of the act. Art. 9, § 27, Or. Const. If an act is not a "special" one because it is also a "public" one,— that is, an act of which courts take judicial notice,— then every prohibition contained in the constitution against special legislation may be violated with impunity. According to this idea, if the law is "public" it is not special. But the constitution makes it public, however special in its nature or operation, unless the legislature otherwise declare. So, as there can be no special law, according to this theory, unless the legislature declares it private, it is not likely that when it undertakes to pass an act upon subjects forbidden to special legislation that it will take the trouble to declare it private, and thus subject it to the risk of being declared unconstitutional. But undoubtedly, under the constitution of the state, an act may be both "public" and "special or local," and the presence of one of these qualities in no way implies or excludes the other. An act cannot be both "public" and "private," but it can be either and be special.

The brief for the defendants also contains the statement, much circulated at the time the provisional injunction was allowed, to the effect that the supreme court in *Mumford* v. *Sewell, supra,* had decided that the act of 1882 is not in conflict with the constitution of the state, and this court had disregarded such decision, and held the act void notwithstanding. Now, the fact is, the court, in *Mumford* v. *Sewell,* did not hold the act constitutional any further than as follows: (1) It was passed by the legislature according to the form prescribed by the constitution; (2) the legislature has power to provide for the taxation of mortgages; and (3) the act does not impair the obligation of the contract between the mortgagor and mortgagee. The first of these rulings was followed by this court of course, without comment, and the second with express approbation. The third ruling was concurred in, but, as the question involved is a federal one, it was decided by this court for itself. The question of uniformity, upon which this court held the act void, was not presented to the state court, or de-

cided by it. If it had been, this court would have followed it, of course.

To intelligent and fair-minded persons this explanation of so plain a matter may seem superfluous. But the statement that this court had wantonly and arbitrarily disregarded a decision of the supreme court of the state on a question of local law, has been so positively and persistently made, that I deem it but just to myself, and the court in which I have the honor to sit, to correct it.

It is hardly necessary to add that in all my action in this matter I have not been influenced by any desire to promote or prevent the taxation of mortgages, but only to ascertain and determine the rights of the parties to this suit under the laws and constitutions of the country.

The demurrer is overruled, and the defendants have 10 days, as provided in the stipulation, in which to answer the bill.