## FIXING OF REVALUATIONS BY A BOARD OF REVIEW.

[Circuit Court of Lucas County.]

THE NATIONAL LAND & INVESTMENT COMPANY v. DAVID T. DAVIES, JR., AUDITOR, ET AL.

Decided, November 7, 1906.

*Taxation—Rules Controlling Boards of Review—Equalization and Correction of Errors—Values as They Existed at the Time of the Decennial Appraisement—Must Control Revaluations—Character of Complaint Necessary to Invoke Action by Board—Injunction—Section 2814, Relating to Equalization.*

1. The rules governing the present boards of review are those formerly governing decennial boards of equalization, as found in Section 2814, Revised Statutes.
2. In equalizing values and correcting errors made by the decennial appraisers, a board of review must at all times be guided and controlled by values as they existed at the time of making the decennial appraisement, and not by values as at present existing.
3. The complaint mentioned in the statute as a prerequisite to a revaluation by a board of review must be a substantial complaint, made by a tax-payer or party in interest, and coming to the board of review, and not instituted by it or by its direction.

PARKER, J.; HAYNES, J., and WILDMAN, J., concur.

This is an action to enjoin the officers, whose duty it is to collect taxes, from collecting taxes in accordance with certain valuations placed upon certain properties by the municipal board of review for this city, in pursuance of Section 2819-1 of the Revised Statutes.

We had expected that the opinion would be delivered by Judge Wildman, but after considering the matter for some time, the judge is in so much doubt about the correctness of the conclusions that have been reached by Judge Haynes and myself that he prefers not to deliver the opinion. And, just being apprised of this, I am not well prepared to deliver an opinion. We have considered the questions presented by this record very carefully; they involve the construction of a large number of the sections of the statutes

on the subjects of the valuation of real estate for taxation, and the functions of various boards that have to do with the changing of values. All of such boards theretofore existing in this municipality, or having to do with the valuation of property here, have been superseded in their functions by this board of review. The statute does not seem to us to confer any new powers upon this board of review, but seems to confer upon it powers theretofore existing and vested in other boards. This board, proceeding in pursuance of this statute has, according to the allegations of the petition, ignored the valuations placed upon the properties by the decennial appraisers and the decennial board of equalization; that is to say, it has not considered those valuations as, in any respect, binding upon it, where it has found that the values have changed since such appraisement and equalization were made.

The important question, as we understand it, in this case is, whether this board of review, in performing its duties, may take into consideration such changes and fluctuations of value in the real estate of the city as have occurred since the time of the decennial appraisement.

Having laid aside the authorities that we have considered, and allowed them to pass out of my mind, so that I can not readily refer to them and can only give the impression the reading of them made, and I am only prepared to state our conclusions in a very general way.

Our conclusion is that this board is governed by the rules governing decennial boards of equalization, found in Section 2814; and the construction of those rules brings us to the conclusion that the board of equalization must review, equalize and correct errors in the returns made by the decennial appraisers, and must all the time have in view and be guided and controlled by the values as they existed at the time of the decennial appraisement; that the intention and purpose of the statute is to give some stability to the decennial appraisements; that the general scheme and policy of the law is to require the appraisement of real estate once in ten years, decennial periods, according to the values of such real estate at the time; and that thereafter during the decennial period, no change is to be made in

the appraisement, because of any fluctuations in value, except in special cases of structures destroyed, or new structures erected, or where new property is brought upon the duplicate, which by some error has been omitted; that all corrections, all equalizations, are to based upon the values at the time of the decennial appraisement. Real estate is to be appraised once in ten years, personal property every year: and that there is no more authority for changing the values of real estate, because of fluctuations during the decennial period, than there is for changing the values of personal property, because of fluctuations in the values thereof, occurring during the yearly period.

In support of the demurrer counsel also raise the point that there has not been such complaint as is required by the statute. Since there has not been any complaint by a tax-payer that any error existed in said decennial valuations for the year 1900, which required a special equalization as between said tax-payer's property and any other property of the city of Toledo, or between said tax-payer's property and said property of the plaintiff. I am not prepared to say for myself that a complaint need be made by any one specially interested, though perhaps it ought to be made by a tax-payer; but I do think that the complaint should be of an error respecting the valuation of the year 1900; what is contemplated by the law is the correction of errors with respect to those valuations; and the requirement of the statute was not answered by making an alleged complaint that some property during the decennial period had become more valuable than it was at the beginning of the decennial period; that is not the kind of a complaint contemplated by the law. I believe my associates have more definite and perhaps more radical views upon the subject of the complaint; I leave that for them to express for themselves.

The demurrer will be overruled.


WILDMAN, J.

We have all of us realized the importance of an early decision of this matter, in order that the case may be taken by either party to the Supreme Court, that we may obtain a decision from that court upon a question of such wide-reaching import-

ance. For myself, I have not been able to satisfy myself that the conclusion which Judge Parker has announced, as to the limitation of the power of the board of review, is correct; in other words, that in its power of equalizing the values of property, it is limited to a mere correction of the returns as made by the assessors, and afterwards equalized by the decennial board of equalization, or by the board of review, sitting as such. The statute substitutes for the original county and city boards of equalization, both decennial and annual, a new board, under a new name, clothed with all the powers that belonged to the boards as originally constituted under the prior legislation. I am not quite clear that it must sit at one time as a board of equalization and at another time as a board of revision, or that its powers are limited to a mere correcting of the values as returned in the decennial year, in this case in the year 1900. It has seemed to me that perhaps in the case of *Mitchell & Watson* v. *The Treasurer of Franklin County*, 25 O. S., 143, cited by counsel in argument, Judge McIlvaine has expressed the true rule; and yet, I am not, on the other hand, prepared to say that that announcement by him was necessarily called for by a consideration of the case; that it was anything more than a *dictum,* and possibly it is not conclusive authority in this case.

In the case of *Black et al* v. *Hagerty, Auditor,* 16 C. C., 255, Judge Wilson, for the Hamilton Circuit Court, seems to agree with the view expressed by Judge McIlvaine that the annual board of equalization is clothed, or was, under the statutes as then existing, with the power of fixing the values as determined by fluctuating conditions; or, in other words, ascertaining the fluctuating values during the decennial period; and that that was an office to be performed by the annual board in addition to the mere fixing of values of new structures, or subtracting the values of structures destroyed or of property taken out of the territory of the city, or structures or additions or property brought into the city.

I do not wish to be understood, however, as being decided in this opinion. I desire to give it further consideration. Counsel are aware that within the last two or three weeks I have been

just a little bit distracted by some other matters that have interfered somewhat more than I desired to have them interfere with the performance of my duties in the consultation room. I have tried to give careful attention to all cases; but I was subject to constant interruptions by various matters that have interfered with as careful examination of briefs of counsel and decisions cited as I should prefer to give them.

It is my judgment that the complaint mentioned in the statute as a prerequisite to a revaluation by the board of review, must be a substantial complaint, a complaint by some person in some way interested, whether the valuation that is to be made is an ascertainment of an existing value, or an ascertainment of what was the proper value at the beginning of the decennial period. In either event it seems to me that it should be a complaint that comes to the board of review, and not one that it institutes itself or causes to be instituted by an order on one of its officers. The petition alleges in substance that the board of review selected a block of buildings or number of buildings or blocks of properties as to which it designed to make a revaluation, and that it directed one of its officers to make a complaint. It seems to me that such a technical formal complaint is not such a complaint as the legislators contemplated. And for that reason I am disposed to agree with my associates in overruling the demurrer to the petition. The demurrer, of course, concedes the facts properly pleaded in the petition, including this among others. Whether the attorneys for the parties pleading may desire to amend, or whether they prefer to submit the matter to the higher court, letting the judgment at once be entered here, I have no means of knowing. Of course if an answer should be filed in which an issue should be raised as to the matter to which I have given special attention and have expressed myself, it might involve a reconsideration so far as I am concerned. I do not know as to my associates. As to the more important and main question involved in the case I have not given it quite the attention that it seems to me that its importance demands, although I have read the authorities and have examined somewhat the briefs of counsel and the pleadings.

HAYNES, J.

I wish to say a word or two in this case, before I forget it. The statute creating the board of review is one of those happy statutes that are passed by the Legislature which, instead of stating explicitly and clearly what may be done by these boards of reviews, has given it the powers of several boards, and it is difficult to ascertain just what the powers are. I have tried, after reading the briefs of counsel in the case, to get some line or passage in the act upon which I can stand and say I clearly find that this board has power to raise these assessments in the manner in which they have done. I do not find any such power clearly given nor given by necessary implication. The allegation of the petition is, as I understand it, that these appraisements have been raised without any reference to the decennial valuations, or the value of the land at the time of said decennial valuation; but that the board has taken the valuation of the lands at the existing times. Now in the legislation for Cuyahoga county, power was given to the board of review of the county of Cuyahoga to raise revaluations during the intermediate period between the decennial periods, the value of property according to the then existing values at the time that the raise was made. The Supreme Court held, in the case of *Gaylord* v. *Hubbell*, 56 O. S., 257, that so far at least as the annual boards were concerned, such boards had no such power, and because they had no such power, and because the Cuyahoga law was of a general nature and gave such power, it was unconstitutional, and they so declared. Since that time, however, they have made this law, in a measure. a general law, but these same decennial boards now stand, with the same powers they had at that time; and the Supreme Court has declared in positive language that annual boards can not during the decennial period raise the value of property to the value it is found to have at the time they attempt to make the raise. The question then was whether or no, acting as a board of revision, or as a board of review after the decennial appraisement, they could make the raise as claimed. Well, now, it seems to me that in the case of *The State* v. *Morris*, 63 Ohio St., 496, where there is a full discussion of these statutes by Judge Burket, the

Supreme Court has thrown light upon the question. The question there raised was whether the Hendley act, so-called, was inconsistent with another act passed by the Legislature at the same session, the so-called Royer act; and he makes a very careful examination of the statutes and it seems to me he very clearly states at the conclusion of the opinion that under the Royer act the board acts as a decennial board; that the board is to meet and adjourn at a certain time—it may be called again by the auditor—then it adjourns, but its whole business is to adjust and equalize the returns that are made by the assessors and are set forth in the duplicate made up from their report; and that by necessary inference, almost by clear statement, their powers are confined to the review of that board and the raising and equalizing of the property on the duplicate according to the values at that time. And I am unable to find any point or any place where power is conferred upon this board of review to raise during the decennial period the valuation of property other than equalizing it from time to time, from any particular amounts that are made with the valuations at the time that the decennial appraisement was made.

It has been suggested that if property be raised only to the actual valuation, there can be no complaint—and the case with which we are familiar in the 37th O. S., *Wagoner* v. *Loomis,* is cited. But that is not the question here—that does not bear upon the case at bar. If they have no power to raise it, the whole business is invalid and of no effect, no matter whether they put it to the actual cash value of the property or any other amount. It is a question of power and the Supreme Court has recognized the rule. There is where the case stands with me at the present time. I think under the allegations of this petition, the demurrer should be overruled. And if the parties see fit to answer and make any other allegations and explain a little more fully, of course they should be given permission to do so; but as the case now stands, I am led to the conclusion that the power has not been granted to this board to do what is done in this particular case.

JUDGE WILDMAN:. I think we are all agreed that the law is constitutional.

JUDGE HAYNES: That has been decided by the Supreme Court in a case that went up from Ashtabula county—they declared the law to be constitutional.

JUDGE WILDMAN: They also held in *State* v. *Clark*, 68 O. S., 463, that it repealed the act providing for annual city boards of equalization, which it could not do unless it was a valid act.

JUDGE PARKER: By putting the construction upon the law that the majority of this court does, I see no reason to doubt its constitutionality. If it requires the other construction however, it seems to me that then this board may exercise powers very different from those exercised by the county boards or by like boards throughout the state, and then it is a law of a general nature, not having uniform operation throughout the state, and therefore it would not be constitutional. I think that to hold it constitutional requires the construction that the values to be fixed must be those existing at the time of the decennial appraisement.

As to the scope of the authority of the board of review to change valuations, I wish to add that the brief of attorneys L. W. Storey and F. E. Calkins, wherein the statutes are carefully analyzed, presents this phase of the case fully and clearly—and their reasoning and conclusions thereon are to me quite convincing and satisfactory.

Another question has been presented in argument upon this demurrer to which it may be well to make some further reference at this time. It is urged by the plaintiff that the petition falls short of showing grounds for interference by injunction because it is not alleged therein, distinctly, that the valuations by the board of review exceed the actual value of the property either when made or in the year 1900—and the case of *Wagoner* v. *Loomis*, 37 O. S., 571, is cited on that point. It is there laid down as the law of this state that: "Inequalities in the valuations, made under a valid law, of property for taxation, do not constitute grounds for enjoining the tax, in the absence of fraudulent discriminations by the agents and officers charged by the law with the duty of making such valuations," and that "even

in such case equity will not relieve a taxpayer whose property is not assessed in a greater amount than would have been imposed upon it, in case all the taxable property of the state had in fact been assessed by uniform rule and at its true value in money"; and in the application of these principles relief was refused to the plaintiff though his property had been valued at 80 per cent. of its true value in money, while other property in the county was valued at but 40 per cent. of its true value, and though, as was said by Judge McIlvaine in deciding the case, the record fully established that "a gross, if not a scandalous inequality" was the result. But the court places the decision upon the ground that no more was shown than a "mistake or error of judgment" on the part of the officers upon whom devolved the duty of fixing valuations under the law, and it is pointed out that the law has made ample provisions for the correction of such errors in tribunals specially provided for that purpose, and that parties complaining must (in the first instance, at least) seek redress in such tribunals. Manifestly a court of equity can not enter upon such inquiries and attempt to adjust mere inequalities of burdens thus accidentally and inevitably arising, without superseding such special tribunals in the exercise of their functions, overburdening the court and reducing all to confusion, producing greater evils than it would cure.

But here we have a case where the petition sets forth that the tribunal provided for the correction of such errors has itself not merely erred in certain instances, but has proceeded and is proceeding according to a rule and system based upon an erroneous construction of the law and of its authority in the premises, that must result in wrong and excessive valuations unless by accident in some instances the right values may be hit upon.

To such a state of facts we think the case of *Wagoner* v. *Loomis* does not apply. In such a case it does not devolve upon the plaintiff to allege specifically that his property has been valued above its true value in money. As said by our Supreme Court in *Exchange Bank* v. *Hines*, 3 O. S., 1-15: "Taxing by uniform rule requires uniformity, not only in the rate of taxation, but

also in the mode of assessment upon the taxable valuation.''
The equality and uniformity required by the Constitution
requires such measure of uniformity in the mode of fixing values
that just results are at least possible, and will probably be
attained. If the law requires—and we hold it does—that the
values to be regarded are those of the year 1900, manifestly
a rule and system whereby such values are to be disregarded
and those of subsequent years taken instead, must in many,
if not in most cases, result in destroying that equality and uni-
formity required by the Constitution and aimed at by the law.

Among the cases we have examined that give light upon this
point and tend we think to support our views, are those of
*Exchange Bank* v. *Hines,* 3 O. S., 1; *Cleveland Trust Co.* v.
*Lander,* 62 O. S., 266; *The Railroad Tax Cases,* 13 Fed. Rep.,
722; *First National Bank of Toledo et al* v. *Treasurer of
Lucas County,* 25 Fed. Rep., 25; *Taylor et al* v. *Louisville &
N. R. R. Co.,* 88 Fed. Rep., 350; *Cummings* v. *National Bank,*
101 U. S., 153.

*F. E. Calkins* and *L. W. Storey,* for plaintiffs.

*Seney & Thurstin* and *W. S. Thurstin* engaged in other cases
of like character, filed briefs and made arguments in support of
the position of the plaintiff herein.

*Ulery, Martin & Webster,* for defendants.