The State, *ex rel*. Beedle, *v*. Schoonover.

Filed Nov. 4, 1893.

---

No. 16,111.

THE STATE, EX REL. BEEDLE, *v*. SCHOONOVER.

ELECTIONS.—*Statute Construed.*—*Penal Statute.*—*Punitive Damages.*— *Hiring, etc., Elector to Vote, etc.*—The act approved March 9, 1889, to secure the purity and freedom of the ballot, giving to the voter who has been hired, bought, or induced to vote or refrain from voting, by the means therein specified, a right of action on the liability thereby created, is constitutional. Such liability is not a debt, but is a penalty for a tortious act, and the act is not in violation of article 1, section 67, of the bill of rights, abolishing imprisonment for debt, except in case of fraud.

LEGISLATURE.—*Power to Modify Common Law and Provide Remedies.*— The Legislature has ample power to create a remedy for wrongs, which, at common law, were without redress; and the common law may be changed by statute, and, in such case, the statute, and not the common law, prevails.

SAME.—*Civil and Criminal Actions for Same Act.*—*Punitive Damages.*— *Jeopardy.*—The Legislature may provide for the recovery of punitive damages, in cases where injury is caused by an illegal act, notwithstanding the same illegal act may subject the defendant to a criminal action, and such proceedings do not operate to put the defendant twice in jeopardy.

From the Warren Circuit Court.

The State, *ex rel.* Beedle, *v.* Schoonover.

*A. G. Smith,* Attorney-General, *J. McCabe* and *E. F. McCabe,* for appellant.

*J. F. Hanley, E. C. Stansbury, I. E. Schoonover* and *A. Schoonover,* for appellee.

DAILEY, J.—Appellant's right of action, in this case, rests entirely upon an act of the general assembly of the State of Indiana, entitled "An act to secure the purity and freedom of the ballot." Approved March 9th, 1889, Acts 1889, p. 360, Elliott's Supp., section 1396.

The complaint alleges, in substance, that appellee was a candidate at the general election held on November 4th, 1890, for the office of clerk of the circuit court of Warren county; that the plaintiff's relator was a qualified voter of said county; that said defendant still being such candidate, and relator still being a resident voter of said county, said defendant hired said relator to vote for him for said office, at the election to be thereafter held on said 4th day of November, 1890, at and for the price of ten dollars to said relator then and there paid by said defendant and by the means aforesaid, and said relator did vote for said defendant and did refrain from voting for any other candidate for said office. Wherefore, relator says an action has accrued to him for the sum of three hundred dollars, with one hundred and fifty dollars attorney's fees, for which judgment is demanded and other proper relief.

Appellee demurred to the complaint for want of sufficient facts to constitute a cause of action. The demurrer was sustained; appellant excepted and prayed an appeal to this court.

He assigns as error that "the Warren Circuit Court erred in sustaining the demurrer to the complaint." This specification brings into review the action of the trial court.

It is conceded by appellee that if the act approved March 9th, 1889, was in force at the time of the grievances complained of, and was constitutional when appellant commenced this action, then the court erred in sustaining appellee's demurrer, but he earnestly contends, first, that the act was unconstitutional; and, secondly, that it was repealed by an act entitled "An act.concerning elections and nominating conventions to maintain political purity, and prescribing the punishment for any violation thereof," likewise approved March 9th, 1889, Acts 1889, p. 267, because the last named act was passed two hours after the enactment of the former. In support of appellee's first contention he insists that it conflicts with that portion of the "bill of rights," which forbids that a party shall be deprived of property except by the law of the land; that it is contrary to the fundamentals of justice and good government, and to the cardinal principles of the social compact; that it is an arbitrary fiat by which a legal demand is created in favor of one person and against another,—a thing quite beyond legislative power, and that a private legal demand is not created by legislative enactment; that in addition thereto it kindly furnishes the machinery of the criminal law of the State to enforce the collection of such demand by imprisonment, thus violating the constitutional prohibition against imprisonment for debt; that the act in question does not contemplate any injury to the vote-seller, nor damage of any kind upon which an action might legally rest, and is simply a created debt, but, if it should be conceded that there is an element of damage or compensation suggested by the act it would still be open to the objection that he who comes into court seeking damages on account of injury or loss occasioned by the fraud of another must show himself to be entirely free from participation in such fraud; that the act under consideration

The State, *ex rel.* Beedle, *v.* Schoonover.

not only allows the party so purchased to participate in the subject-matter of the wrong, but offers him the entire amount of the penalty as a reward or premium for engaging in the unlawful act, which could not have occurred without his wrongful participation; that damages can never be recovered for an injury caused wholly or in part by the plaintiff's own wrongful act, or if the injury was, in whole or in part, of his own seeking or in violation of law, and if the act contemplates no damages or loss to the seller, then punitive or exemplary damages can not be awarded, for the reason that such damages are never allowable where the element of compensation or compensatory damages is wanting.

This is an epitome of the argument of the learned counsel for the appellee in their contention that the law in question is invalid: "In the construction of statutes the prime object is to ascertain and carry out the purpose of the Legislature in their enactment, and to do this the words used must be first considered in their literal and ordinary signification, but the courts may go beyond such meaning of the words, and look to other statutes upon the same subject, to the objects contemplated, the evils to be corrected, and the remedy provided." *City of Evansville* v. *Summers*, 108 Ind. 189, and cases cited.

In the case of the *City of Valparaiso* v. *Gardner*, 97 Ind. 1 (6), 49 Am. Rep. 416, in speaking of the rules of construction, this court said: "While it is our duty to yield to the words of the constitution, still, in determining what meaning they were intended to have, it is proper to consider the circumstances under which the provision was adopted and the object it was intended to accomplish. Cooley Const. Lim. (5th ed.), 78, 79."

It is an historical fact, and, therefore, a matter of which this court will take judicial notice, that at the

time of the meeting of the Legislature of 1889, there was, and for several years prior thereto had been, a strong public sentiment, in this State, in favor of more stringent laws to secure the purity and freedom of the ballot, and prescribe adequate punishments for any violation of their provisions, and the pressure of this sentiment was greatly augmented by charges of fraud and corruption attending previous recent elections. The legislators, fresh from the people, were imbued with this sentiment, and pledged to enact all laws necessary to accomplish the needed reforms. As to judicial notice of historical facts, see *Stout* v. *Board, etc.,* 107 Ind. 343, and *Williams* v. *State,* 64 Ind. 553, are cited.

When the General Assembly convened, in 1889, vote buying and vote selling were punishable alike, and convictions were extremely difficult, for want of evidence, or even an informant to set the machinery of the law in motion. These facts justify the inference that the object and purpose of both enactments of March 9, 1889, were to detect and punish vote buying, and suppress the traffic in human honor, even, if to do so, it became necessary to offer and bestow a premium on one of the culprits. The sanctity of the ballot, the freedom and purity of our elections, were, to them, of paramount importance to everything else; hence, the one act provided for a civil penalty, and the other for a criminal prosecution for the offense in question, so as to open every avenue to its discovery. Our law-makers, in their wisdom, concluded to exempt the weak from punishment, and inflict it on the strong. It is an innovation of the policy of the old law, but the act of making merchandise of manhood is of great moral turpitude, the disease was desperate, the remedy heroic, and whether they legislated wisely or not is not for us to say.

It was the common law, and is yet the law of this

State, except as it may be modified by statute, that one who comes into court seeking damages on account of injury or loss occasioned by the fraud of another, must show himself free from the fraud or wrong; but the common law may be changed by statute, as was done in this instance, and in such case the statute, and not the common law, prevails. The Legislature has ample power to create a remedy for wrongs which, at common law, were without redress. This being so, a coördinate branch of the government can not nullify its action.

It is true that section 59, article 1, of the Bill of Rights provides that "No person shall be put in jeopardy twice for the same offense," but the jeopardy mentioned is the peril of a second criminal prosecution for the same felony or misdemeanor, and the liability named in section 1396, Elliott's Supp., is a civil penalty for a tortious act, and not a debt.

Section 67, article 1, of the Bill of Rights, which abolishes imprisonment for debt, expressly excepts cases of fraud.

It will not do to say that a person who is induced to vote for any candidate is not injured. He has sold his birthright. Under temptation to which he was subjected, he has bartered his honor, his manhood, his political freedom, his sovereignty. We can not judicially say he has not been injured. While the body politic has suffered greatly, the loss he has sustained is infinitely more. It is for the Legislature to say what the status of a bribetaker shall be, in this class of offenses, and whether he shall or shall not recover a penalty in a given case, so that the crime may be discovered, and the guilty punished. Such enactments are in harmony with the spirit and genius of the constitution and the preservation of good government.

We are earnestly reminded by appellee that there is

present, in this case, the question of · the repeal of the
statute constituting the basis of this prosecution, by the
other act of the same date, which was last to receive ex-
ecutive approval.   Counsel affirm, without hesitation,
that it repeals the former, because it repeals all laws in
conflict therewith.   Inasmuch as the two acts are not
conflicting, but are in aid of each other, in the matter of
securing honest results in the election of public servants,
we can not agree with counsel in their contention.

The case of *State, ex rel.,* v. *Stevens,* 103 Ind. 55, is,
in many of its features, closely analogous to the one be-
fore us, and completely overthrows the theory of coun-
sel.   It was a suit on the bond of a county clerk for a
statutory penalty of five times the amount of illegal fees
charged, etc.   The court below had sustained a demurrer
on the ground, among others, that it was a second jeop-
ardy, and, therefore, unconstitutional.   This judgment
was reversed, and it was held that such officer was
bound to answer to the injured party for the penalty, and
to the State for the fine.   It is said, on page 65, in con-
cluding the reasoning upon this branch of the case, that
"All criminal punishment is of necessity punitory, and,
in a degreè, exemplary, and when an offender is made
the subject of example by being once punished crimi-
nally, and is again subjected to exemplary damages in
a civil suit for the same offense, for a public example,
he is put to the hazard of being set up as an example
twice for the same offense.   Where, however, a statute
makes certain conduct a misdemeanor, and annexes to it
a prescribed fine to the State, and also provides that the
worngdoer shall be liable to the injured party in a fixed
or limited sum, it is certain from the beginning what
the consequence may be, and there is no possibility that
the penalties may overlap each other so as to put him in

The State, *ex rel.* Beedle, *v.* Schoonover.

jeopardy of being tried twice, or sufferig double the punishment prescribed for the same offense.''

Indeed, we go a step farther, and indorse the reasoning of Judge Elliott, in his dissenting opinion in the same case, in which he says: ''I concur in the conclusion reached, but I do not agree with all the reasoning of the prevailing opinion, nor assent to all the propositions laid down. My opinion is * * * that the Legislature may provide for the recovery of punitive damages in cases where an injury is caused by an illegal act, although the same illegal act may subject the defendant to a criminal prosecution. As the Legislature has the power unabridged by constitutional limitation, it has the authority either to limit the amount to be recovered, or to leave it to be ascertained upon trial. It is not a question for the courts whether the power is wisely or unwisely exercised; the only question for the courts is, does the power exist, and has it been exercised? Once the power is found to exist, all questions of policy and wisdom in its exercise pass outside of the judicial department of the government.''

We think there is no logical escape from the conclusion that the statute is constitutional. Judgment reversed, with instructions to the circuit court to overrule the demurrer to the complaint.

McCABE, J., took no part in this opinion.

Filed Nov. 1, 1893.