LOUISVILLE TRUST CO. v. STONE, Auditor, et al.

(Circuit Court of Appeals, Sixth Circuit. April 2, 1901.)

### No. 733.

1. TAXATION — ASSESSMENTS— DISCRIMINATION—INJUNCTION—INTERFERENCE OF FEDERAL COURT.

   Every presumption being in favor of the propriety of the action of assessment officers, and errors of judgment on their part not being a subject for injunction, proof that systematic discrimination is being made against a complainant corporation must be clear and convincing, and conclusively preponderate over opposing evidence, before a federal court will interfere by injunction in its behalf.

2. SAME—JURISDICTION OF FEDERAL COURTS.

   Jurisdiction of a federal court having been properly invoked for relief against assessments as discriminating against complainant, and thus depriving it of the equal protection of the laws under the fourteenth amendment, the bill, where complainant fails to show discrimination, may be retained to administer relief on other grounds, though the state courts could afford adequate remedy.

3. SAME—ILLEGAL TAXATION—RELIEF IN EQUITY—INADEQUATE REMEDY AT LAW.

   A suit in equity lies to enjoin illegal taxation in Kentucky, as the statutes of that state do not afford an adequate remedy at law.

4. SAME—CORPORATE STOCK—AFFIDAVIT FOR INJUNCTION—SUFFICIENCY.

   In support of an injunction against the taxation of corporate stock belonging to complainant, a Kentucky corporation, its president made affidavit that it owned the stock of the M. Co. in question; that it stood on its books at a specified value, and formed a part of complainant's reported capital and surplus; and that the M. Co. was a Kentucky corporation, and as such pays taxes on its property and franchises. *Held*, in the absence of contradiction, to fairly establish that the M. Co. was a Kentucky corporation, which paid taxes on its property and franchises, thus excluding complainant, as an individual stockholder, pursuant to Ky. St. §§ 4085, 4088, from taxation on its holdings therein.

Appeal from the Circuit Court of the United States for the District of Kentucky.

James P. Helm, for appellant.

Lewis McQuown, for appellees.

Before LURTON, DAY, and SEVERENS, Circuit Judges.

DAY, Circuit Judge. This is a bill to enjoin the board of valuation and assessment of the state of Kentucky from assessing the property of the complainant at more than 70 per cent. of the face value thereof, and from taxing certain stock, the property of complainant, upon the ground that said stock is held in a Kentucky corporation, which, by the laws of the state, pays taxes on all of its property. It may be conceded that, if the allegations of the bill are made out, there exists in respect to the property of complainant, and others similarly situated, a systematic, intentional, and illegal undervaluation of other property by the taxing officers of the state, which necessarily affects an unjust discrimination against the property of which the plaintiff is the owner, and a bill in equity will lie to restrain such illegal discrimination, and that in such cases federal jurisdiction will arise because of the equal protection of

107 F.—20

the laws guarantied by the fourteenth amendment. Taylor v. Railroad Co., 31 C. C. A. 537, 88 Fed. 350; Railway Co. v. Taylor (C. C.) 86 Fed. 168, in which the grounds of federal jurisdiction are carefully examined and fully stated by Judge Clark, who delivered the opinion. The questions principally argued, and upon which this case turns, are those of fact. It appears that there existed in the state of Kentucky a statute which authorized the state board of equalization to fix the percentage of value of real property for taxation at 70 per cent. of the cash value, to raise the valuation to that amount in counties whose list of real property was below that standard, and to lower it in those counties whose average lists are above the same; also personal property was to be equalized by adding to and subtracting from the list of personal property, as the case may be, the same per centum as was added to or subtracted from the list of farm lands for the same county, and for this purpose the average per centum of assessed value to the cash value of farm lands should be used. Sections 4274, 4275, Ky. St. After the passage of these statutes, the new constitution of Kentucky went into effect, which provided:

"Sec. 172. All property not exempt from taxation by the constitution shall be assessed for taxation at its fair cash value estimated at the price it will bring at a fair voluntary sale."

This constitution went into effect in 1899. It established a rule for taxation inconsistent with the prior statutes, and must be taken as repealing those statutes which are in conflict with the constitutional provision. November 11, 1892, an act was passed (section 4020, Ky. St.), which provides:

"All real and personal estate within this state, and all personal estate of persons residing in this state, and of all corporations organized under the laws of this state, whether the property be in or out of this state, including intangible property which shall be considered and estimated in fixing the value of corporate franchises as hereinafter provided, shall be subject to taxation unless the same be exempt from taxation by the constitution, and shall be assessed at its fair cash value, estimated at the price it would bring at a fair voluntary sale."

Also section 4267:

"All acts and parts of acts in conflict with this act are hereby repealed, except an act entitled 'An act to provide additional funds for the ordinary expenses of the state government,' approved June 4, 1892, and also except an act amendatory thereof, approved July 6, 1892."

The value of the complainant's property, as assessed by the board having authority over the property of such corporations, being the defendants in this case, may be said to be the full cash value of the property. The contention upon this branch of the case is that the state board of equalization, in equalizing the other property of the state systematically and uniformly, and particularly in the years 1897 and 1898, assessed and valued other property at only 70 per cent. of its fair cash value. If this is true, there is manifest discrimination against the complainant. It has procured affidavits of 8 members of local boards of supervisors, before whom the returns of the assessors go, 26 county court clerks and ex county court clerks, 31 sheriffs and ex-sheriffs, 24 county judges and ex county

judges, 3 county attorneys, 1 mayor, 1 magistrate, and 1 county treasurer; also the affidavits of certain persons who claimed at certain times to have appeared before the state board of equalization; also the affidavit of one George M. Willis, a member of the state board of equalization for the year 1898. The tendency of this testimony is to show that in the years mentioned the other property of taxpayers of the state was assessed at not above 70 per cent. of its fair cash value. Complainant also presents the affidavit of Mr. Johnson, deputy auditor, who undertook to make a comparison between the assessed values and the cash sales as reported by the clerks of the various county courts in the state with a view of ascertaining what proportion the assessed value bore to the prices of lands reported in said sales for the period between September 15, 1895, and the same date in 1896. The result was that the assessed value of lands in 114 counties, as equalized by the board of equalization, is 71.89 per cent. of the total value of said lands as indicated by said sales. Mr. Johnson also stated that this was a year of very great depression in real estate values. He also produced a table showing the assessed value of farm lands of Kentucky for the years 1894 to 1898, inclusive, as equalized by the state board. This table indicates but little variation in the equalized value of the lands for the years given. To meet this testimony, the appellees offered the affidavits of 95 county assessors, who assessed the real and personal property in their counties for the years 1897 and 1898, each of whom swears that the real and personal property of his county was assessed for taxation at its fair cash value, estimated at the price it would bring at a voluntary sale. The affidavits of 52 county clerks who were in office in 1897, and were ex officio the clerks of the board of tax supervisors, and 62 county clerks for the year 1898, were filed by appellees. These affidavits are, in substance, that the property was valued in like manner at its fair cash value. The affidavits of four members of the state board of equalization for the years 1897 and 1898 were offered in evidence, and they make oath that the rule of the members was to fix the value of all real estate, personal property, and town lots in each and every county in the state that was subject to taxation at its fair cash value, and that no attempt was made to value the property at 70 per cent., or any other per centum less than 100 per cent., of its fair cash value. Mr. Scott, chief secretary of the state board of equalization in the years 1897 and 1898, says, in his affidavit, that property was valued at its fair cash value; that when below this the value of the property was raised, and when above it was lowered; and that the board had adopted a rule in these years to thus value property. He states that he made the calculations used by the board in 1898; that he used a table showing the assessed value of farm lands and town lots for the past five years. He then ascertained what per centum should be added or deducted, as the case might be, from the farm lands and town lots to bring them to the average, and that he made like calculations for the years 1897 and 1898. These tables were laid before the board, and they passed preliminarily upon the several counties; and he mailed notices to the 119 county judges of

the action of the board, notifying them of the day fixed to hear their county, and requested them to send witnesses, not exceeding five, one of whom should be the county assessor. The assessors, with some exceptions, testified that they had assessed the property at its fair value; that they endeavored to value the property at what it was worth, estimating the value in cash, and at a price it would bring at a fair voluntary sale. It appears that these several assessing officers were all sworn to assess the property at its fair cash value.

Upon consideration, the proof seems to us to fail to make out a case by that preponderance of evidence which is required by a court of equity to justify interference with the action of the state officers in making the assessment of complainant's property. Every presumption is in favor of the propriety of their action. Errors of judgment on their part will not be enjoined. The proof must be clear and convincing that a systematic discrimination is being made against complainant before a federal court will interfere by injunction with the assessment of taxes and the collection of revenues of the state. Great stress is laid on the part of complainant upon the facts stated and deductions to be made from the affidavits of Mr. Johnson. It is true that the year concerning which he testifies shows a percentage not far from 71.89 per cent. of the sale values to have been the assessed value for that year. Also the tables for the years from 1894 to 1898 show little change in the assessed value of farm lands in Kentucky. The argument is that such valuations are inconsistent with the change in the method of assessments alleged to have been adopted by the board of equalization for the years 1897 and 1898; that such uniformity shows that the 70 per cent. plan must have been pursued during all the years. There is much force in this argument. If the testimony before the board of equalization for each of those years was before us for comparison with the results reached, it would be much more convincing, and the result might be a demonstration of one theory or the other. We have not the testimony. We do not know what the proof shows for any given year. It may be that the depression in values for the years 1897 and 1898 would make the fair value for those years not far from 70 per cent. of the value of previous years. The conclusiveness of these tables depends upon the character of the testimony before the board for each of the several years. Not knowing what the testimony was, we do not feel justified in setting aside the sworn testimony of the great majority of the officers concerned that the lands were valued at their fair cash value. While Mr. Scott says a table was used in fixing valuations, he also adds that other testimony was adduced before the board. We are not satisfied that the allegations of the complainant of unjust discrimination against it have been made out by the convincing proof required, and we think the learned judge who heard the case in the court below was justified in withholding the injunction asked upon this ground.

2. A further ground of relief alleged in the bill concerns the assessment of 479 shares of stock held by the complainant corpora-

tion in the J. G. Mattingly Company, a Kentucky corporation, which it is alleged paid taxes on all its property, and therefore it is claimed complainant, by the laws of the state of Kentucky, is exempt from taxation upon the shares of stock held by it in said company. Notwithstanding the failure of complainant to establish its right to relief upon the ground of federal jurisdiction, alleging the unjust discrimination against it in assessing its property at its full value while other property in the state was assessed at 70 per cent. of its face value, thus depriving complainant of the equal protection of the laws under the fourteenth amendment, the jurisdiction of the court having been invoked for that purpose, the bill may be retained to administer full relief concerning the assessment upon the property of complainant based upon the ownership of said shares of stock in the Mattingly Company. If the claim to relief clearly within the federal jurisdiction is fair and colorable, not fictitious and fraudulent, jurisdiction attaches, although the ultimate decision may be against the right claimed. Penn Mut. Life Ins. Co. v. City of Austin, 168 U. S. 695, 18 Sup. Ct. 223, 42 L. Ed. 626. When the jurisdiction has properly attached, it extends to the whole case, and to all the issues involved, whether of a federal or nonfederal character, and the court has power to decide upon all questions involved. This was the statement of the principle in Railway Co. v. Taylor (C. C.) 86 Fed. 168, and seems to be amply supported by the authorities. New Orleans, M. & T. R. Co. v. Mississippi, 102 U. S. 135, 26 L. Ed. 96; Horner v. U. S., 143 U. S. 570, 12 Sup. Ct. 522, 36 L. Ed. 266; Scott v. Donald, 165 U. S. 71, 17 Sup. Ct. 265, 41 L. Ed. 632. The federal jurisdiction having been properly invoked, we may examine into the other questions made in the case, notwithstanding as to them there may be a remedy in the state court. In Bank v. Stone (C. C.) 88 Fed. 383, heard in the circuit court before Justice Harlan and Judges Taft and Lurton, it is expressly held that an action in equity will lie to enjoin illegal taxation in Kentucky, as the statutes of that state do not afford an adequate remedy at law. That case contains so full and complete a discussion of the subject that it is only necessary to refer to it. We think, therefore, that we have jurisdiction to inquire into the validity of the tax imposed upon so much of complainant's property as is represented by this stock in the Kentucky corporation. There is no dispute as to the fact that at a value of $46,407 it was included in making up the amount upon which complainant was assessed. It is claimed that there is no proof in the case showing that the corporation is of the character required to exempt its stockholders from taxation, or that the corporation in fact paid taxes upon its property. Ky. St. §§ 4085, 4088, provide, in substance, that the property of all corporations, except where therein differently provided, shall be assessed in the name of the corporation in the same manner as that of a natural person, except that, when legally called on, the chief officer shall report a full statement of the property of such corporation for taxation, and for failure shall be subject to the penalties in the article provided; and, so long as said corporation pays the taxes on all its property, the individual stockhold-

ers shall not be required to list their shares in said corporation. The individual stockholders of the corporations, which are by this árticle required to report and pay taxes upon the corporate franchises, shall not be required to list their shares in such companies, so long as the corporation pays the taxes on the corporate property and franchises as therein provided. The testimony in this respect seems limited to the affidavit of H. V. Loving, president of the complainant corporation, who deposes that the corporation on the 31st day of December, in the years 1896 and 1897, owned, and still owns, 479 shares of the Mattingly Company stock; that said stock stood upon the books of the company at the value of $46,407, and said amount in the reports made as of said dates respectively entered into and formed a part of the capital and surplus of the trust company; that said J. G. Mattingly Company is a Kentucky corporation, and as such pays taxes upon its property and franchises. In the absence of contradictory proof, this affidavit seems to us to fairly establish that said company is a Kentucky corporation of the class which should pay and does pay taxes upon its property and franchises, with the result that individual stockholders are not to be taxed upon their holdings therein. It is true that there are other and better ways of showing that the concern is a Kentucky corporation, and the affidavit as to payment of taxes for the years in controversy is not as specific as it might well have been. There is no testimony, however, to meet the statements of this affidavit. It could have been readily shown, if such is the fact, that the taxes had not been paid. The proof was readily obtainable by the defendants to this bill. No such proof was offered, but the case is rested upon the claim that the affidavit does not make out the necessary facts. Fairly construed, we think that it does, and that it appears that so much of the assessment placed upon complainant's property as includes this stock is not properly made against it. We are of opinion, therefore, that the circuit court properly refused an injunction upon the ground of overvaluation of complainant's property compared with other property in the state, but that an injunction should issue as to so much of the assessment as is based upon the Mattingly Company stock at the value of $46,407. The order denying the temporary injunction, with this exception, is affirmed, and the cause is remanded, with instructions to grant a temporary injunction as to so much of the assessment as was made upon the Mattingly Company stock as above stated, and for such further proceedings as may be proper in the case.