### CITY RY. CO. v. BEARD, County Treasurer, et al.

(District Court, S. D. Ohio, W. D. October 2, 1923.)

No. 41.

1. **Taxation ⬅️608(5)—That assessment is at higher rate than other property not alone ground for equitable relief.**

Absolute equality of taxation cannot be attained, and equity will not relieve against an assessment merely because it happens to be at a higher rate than that of other property, where the inequality may have been due to mistake, error of judgment, or other accidental cause.

2. **Taxation ⬅️608(5)—Equity will relieve against systematic undervaluation, creating unjust discrimination.**

Equity will grant relief from an assessment on the ground of fraud, when it is shown by clear and convincing proof that there is, with respect to certain species of property, systematic, intentional, and unlawful undervaluation for taxation by the taxing officers, which necessarily effects an unjust discrimination against the species of property of which complainant is owner.

3. **Taxation ⬅️40(8)—"Taxing by uniform rule" requires uniformity in mode of assessment.**

"Taxing by uniform rule," required by the Constitution of Ohio (article 12, § 2) implies equality in the burden of taxation, and this cannot exist without uniformity in the mode of assessment, as well as in the rate of taxation.

4. **Taxation ⬅️40(8)—Assessments by different boards treated as unit in considering discrimination.**

The various boards whose united action is by law intended to effect a uniform assessment on all classes of property are to be regarded as one tribunal, and the whole assessment on all classes of property as one judgment, and hence uniform undervaluation of classes of property by one board constitutes a fraud on owner of fully assessed property, though the board assessing his property was free from discrimination.

5. **Taxation ⬅️608(5)—Inequality of assessment ground for equitable relief.**

For purposes of taxation in Ohio, all property, both real and personal, stands on an equality and constitutes a single class, which is to be taxed at its true money value, and if any property within that class, whether

⬅️For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

real or personal, is systematically assessed at less than its true value, the owner of property, be it real or personal, or both, which is unlawfully taxed at a materially higher rate, is entitled to relief at the hands of the courts.

6. **Taxation ☞319(2)—Presumption in favor of legality of action of tax commission.**

The state tax commission of Ohio is a quasi judicial body, and every presumption is in favor of the propriety of its action, where no evidence is offered as to how it determined the valuation of property.

In Equity. Suit by the City Railway Company against Martin L. Beard, County Treasurer, and others. On exceptions to master's report. Exceptions overruled, and report confirmed.

For former opinion, see 283 Fed. 313.

Robert K. Landis (of McMahon, Corwin & Landis), of Dayton, Ohio, for plaintiff.

Haveth E. Mau, Pros. Atty., of Dayton, Ohio, and Ralph E. Hoskot, Asst. Pros. Atty., of Dayton, Ohio, for defendant Beard.

C. C. Crabbe, Atty. Gen., of Ohio, and W. J. Meyer, of Columbus, Ohio, Sp. Counsel, for the State Tax Commission.

SATER, District Judge. The comprehensive and admirable report of the master leaves but a few points requiring consideration. Especially is this so in view of my former opinion, found in 283 Fed. 313, and 20 Ohio Law Rep. 213.

This is one of a series of cases brought by public utility and public service companies in the courts of this district under my immediate control. In each of such cases the ground of attack is the same. All save this are by common consent held in abeyance, awaiting final decision of the instant case. The several cases in the aggregate assail the validity of the tax imposed on the respective plaintiffs in more than one-half of all the counties in the state. The record shows that in many counties, to the knowledge of the taxing authorities, including the state tax commission, real estate is and for a long time has been valued for taxation in this state at less than its money value. This case is therefore of more than ordinary importance.

Although the several other like cases are not at this time before the court for decision, the law applicable to the rights of an individual plaintiff only must be the same as it would be were all of the cases of the same class as this for decision at this time. Sioux City Bridge Co. v. Dakota County, 260 U. S. 441, 43 Sup. Ct. 190, 67 L. Ed. 340, decided January 2, 1923, by the Supreme Court.

[1, 2] Equity will not relieve against an assessment merely because it happens to be at a higher rate than that of other property. Inequalities due to mistake, to the fallibility of human judgment, or to other accidental causes, must be borne, for the reason that absolute uniformity cannot be obtained in taxation. What may be called sporadic cases of discrimination cannot be remedied by the court. A court, however, can interfere when it is made clear that there is, with respect to certain species of property, systematic, intentional, and unlawful undervaluations for taxation by the taxing officers, which necessarily effect

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

an unjust discrimination against the species of property of which the complainant is the owner. Such was the rule announced by Judge (now Chief Justice) Taft in the much-cited case of Taylor v. Louisville & N. R. Co., 88 Fed. 350, 373, 31 C. C. A. 537 (C. C. A. 6). An intentional discrimination in taxation is fraudulent, and a court of equity will grant relief against such fraud. The rule of evidence announced in the Taylor Case is that the proof of systematic, intentional, and unlawful valuation for taxation must be clear, for the reason that an action to enjoin a tax is a collateral attack upon the judgment of a quasi judicial tribunal. 88 Fed. 374, 31 C. C. A. 537. In Louisville Trust Co. v. Stone, 107 Fed. 305, 308, 46 C. C. A. 299 (C. C. A. 6), Judge (later Mr. Justice) Day stated that the proof must be clear and convincing that a systematic discrimination has been made before a federal court will interfere by injunction with the assessment of taxes and the collection of revenues of the state. The master has found that the plaintiff has sufficiently made the legally required proof as to property valuations to entitle it to the major part of the relief prayed for. In that conclusion I concur. The record is so voluminous he did not in his opinion review all of the evidence, but specifically states that his conclusion as to its sufficiency rests upon all of the evidence adduced—a fact perhaps not adequately noticed in the criticism of his report.

[3] That the Ohio statute provides for the separation of the property of a public utility into two classes for the purposes of assessment is not helpful to the defense. The valuation fixed for taxation must in any event be the money value. The percentage of the rate and the basis of the valuation must be the same. As was said in Exchange Bank of Columbus v. Hines, 3 Ohio St. 1, 15, taxing by a uniform rule, such as is required in Ohio, necessitates uniformity, not only in the rate of taxation, but also uniformity in the mode of assessment upon the taxable valuation; uniformity in taxing implies equality in the burden of taxation, and the equality of burden cannot exist without uniformity in the mode of assessment as well as in the rate of taxation. See approval of this rule in Cummings v. National Bank, 101 U. S. 153, 158, 25 L. Ed. 903, and Greene v. Louisville & Interurban R. R. Co., 244 U. S. 499, 515, 37 Sup. Ct. 673, 61 L. Ed. 1280, Ann. Cas. 1917E, 88. The statute may classify property, as in the case of bank shares, for instance, but the valuation fixed ultimately is to be the market value, as was illustrated in Wagoner v. Loomis, 37 Ohio St. 579, a case which, like McCurdy v. Prugh, 59 Ohio St. 465, 55 N. E. 154, differs from the one at bar in that no fraud, conspiracy, or other official unfaithfulness was charged against the taxing officers. Under the Ohio Constitution and the interpretations of it by the state Supreme Court, all property must be taxed uniformly at its money value. In the Wagoner Case, Judge McIlvaine said:

I see "nothing in the Constitution which requires property to be taxed according to the same per cent. of its true value in money, save only the 100 per cent."

Other cases than those above noted enforcing the rule of uniformity of taxation at the money value of the property taxed are City of Zanesville v. Richards, 5 Ohio St. 589, Cincinnati Gaslight, etc., Co. v. State,

18 Ohio St. at star page 243, Cleveland Trust Co. v. Lander, 62 Ohio St. at page 272, 56 N. E. 1036, Anderson v. Brewster, 44 Ohio St. at page 585, 9 N. E. 683, and Cummings v. National Bank, 101 U. S. 153, 25 L. Ed. 903.

The master has correctly found that real estate in Montgomery county is listed on the tax duplicate for assessment purposes at not more than 60 per cent. of its true value. The defense claims that, even if the real estate is taxed at but 60 per cent. of its actual worth, the failure to prove that personal property is, by official misconduct, taxed at less than its money value is a failure to prove discrimination against the plaintiff, the larger portion of whose property is personal. It is safe to say that no one knows, or has ever known, or can ascertain the true value of the personal property in Ohio. The law does not cast on plaintiff the burden of establishing the impossible. In the Wagoner Case, 37 Ohio St. 579, Judge McIlvaine said:

"Personal property generally is annually listed and valued by the owner under oath."

The same is still true. At the time he wrote his opinion (1881) the taxing officers were empowered for just cause to increase a taxpayer's return, as they may do under the present law. Much of the personal property is invisible, for all practical purposes incapable of ascertainment, is not a matter of record, as is real estate, and is easy of concealment. In Cummings v. National Bank, involving Ohio taxing laws, Mr. Justice Miller, at page 162 of 101 U. S., page 903 of 25 L. Ed., after alluding to the fact that the Constitution and statutes of many states by express provision designed compulsory uniformity of taxation at the actual value of all property, adds:

"But it is a matter of common observation that in the valuation of real estate this rule is habitually disregarded."

It is not only a matter of common observation, but of common knowledge, in Ohio, that the personal property returned for taxation is but a relatively small part of the aggregate of such property. For many years past so great is the evil that its correction has been a subject of perennial discussion in the press and political campaigns for the election of legislators, and the electors of the state on different occasions have been called upon to vote upon constitutional amendments designed to get upon the tax duplicate for taxation all, or a much larger part, of the personal property, and unless the courts defeat the present attempted referendum, the voters at the coming November election will again have the privilege of voting upon taxing laws and question of taxation. Mr. Justice Miller, in the Cummings Case, 101 U. S. 163, 25 L. Ed. 903, states the belief that the valuation of real estate for taxation rarely exceeds one-half of its correct salable value, and then assigns the reason for it thus:

"If we look for the reason for this common consent to substitute a custom for the positive rule of the statute, it will probably be found in the difficulty of subjecting personal property, and especially invested capital, to the inspection of the assessor and the grasp of the collector. The effort of the land owner, whose property lies open to view, which can be subjected to the lien of a tax not to be escaped by removal, or hiding, to produce something like actual equality of burden by an undervaluation of his land, has led to

this result. But whatever may be its cause, when it is recognized as the source of manifest injustice to a large class of property around which the Constitution of the state has thrown the protection of uniformity of taxation and equality of burden, the rule must be held void, and the injustice produced under it must be remedied so far as the judicial power can give remedy."

It has already been said that an intentional discrimination in taxation is fraudulent and the federal courts have jurisdiction to grant relief against such fraud. If, therefore, the contention of the defense be true, that personal property in so far as listed, has been taxed at its true value, then, in view of the disclosures of the record as to the taxable valuation fixed on real estate, any of the large class of persons, natural or artificial (plaintiff being of the latter class) so knowingly made the subject of discrimination, is a victim of the manifest injustice of which Mr. Justice Miller spoke, which "must be remedied so far as the judicial power can give remedy." If all the personal property of the state, or of any of its subdivisions, could be ascertained, the amount now and hereafter taxed, even if the tax should be imposed on its full value, would, it is surmised, be a percentage no greater than the 60 per cent. valuation affixed to real estate. In other words, the failure to get all the personal property on the tax list for taxing purposes is the same in effect as to tax the whole of such property at less than its true value. If objection be made to the taking of judicial notice of the failure to get all or a considerable part of the personal property of the state and its political subdivisions on the tax duplicate for taxation purposes, and of the facts in relation to taxation and of the political history and campaigns touching the matter of taxation, reference may be made to Mr. Justice Miller's opinion in the Cummings Case, and 16 Cyc. 867, 868, 864; 15 R. C. L. 1092; Mullen v. Sackett, 14 Wash. 100, 44 Pac. 136; Lewis v. Bruton, 74 Ala. 317, 49 Am. Rep. 816, 818; State v. Savage, 65 Neb. 714, 91 N. W. 716; State v. Schoonover, 135 Ind. 526, 35 N. E. 119, 21 L. R. A. 767; State v. Downs, 148 Ind. 324, 47 N. E. 670; Ludlow v. Brewster, 3 Ohio Cir. Ct. R. 82, 84.

If it be true that personal property has been taxed at its true value, it avails the defendants nothing, for the reason as stated in the Taylor Case, 88 Fed. 372, 31 C. C. A. 537, and the Greene Case, 244 U. S. 518, 37 Sup. Ct. 673, 61 L. Ed. 1280, Ann. Cas. 1917E, 88, an intentional undervaluation of a large class of property, when the law enjoins assessment at the true value, is necessarily designed to operate unequally upon other classes of property to be assessed by other taxing tribunals who, it may be presumed, will conform to the law. The rule in C., B. & Q. R. Co. v. Board of Commissioners, 54 Kan. 781, 792, 39 Pac. 1039, quoted with approval in Mudge v. McDougal (D. C.) 222 Fed. at page 568, is thus announced:

"We do not think the courts are powerless to prevent such a gross discrimination in the assessment and taxation of property as is shown in this case, where one class of property is assessed and taxed at its actual value, and all the other property in the same county is assessed and taxed at only 25 per cent. of its value. The rule favored in this case permits the state and the county to collect from the plaintiff its just share of the public burden, and prevents the unfortunate consequences which would result if all the taxes levied were declared void."

[4] In the Taylor Case, 88 Fed. 350, 31 C. C. A. 537, quoted with approval in the Greene Case, 244 U. S. at page 518, 37 Sup. Ct. 673, 61 L. Ed. 1280, Ann. Cas. 1917E, 88, it was said:

"The various boards whose united action is by law intended to effect a uniform assessment on all classes of property are to be regarded as one tribunal, and the whole assessment on all classes of property is to be regarded as one judgment. If any board which is an essential part of the taxing system intentionally, and therefore fraudulently, violates the law, by uniformly under-valuing certain classes of property, the assessment by other boards of other classes of property at the full value, though a literal compliance with the law, makes the whole assessment, considered as one judgment, a fraud upon the fully assessed property. And this is true, athough the particular board assessing the complainant's property may have been wholly free from fault of fraud or intentional discrimination."

[5] For purposes of taxation in Ohio, all property, both real and personal, stands on an equality and constitutes a single class—a class which is to be taxed at its true money value. If any property within that class, whether it be real or personal, is unlawfully assessed at less than its true value, the party or parties whose property, be it real or personal, or both, is unlawfully taxed at a materially higher rate, is entitled to relief at the hands of the courts. In Southern Railway Co. v. Watts, 260 U. S. 519, 43 Sup. Ct. 192, 67 L. Ed. 375, decided by the Supreme Court January 2, 1923, it is said:

"The rule is well stated that a taxpayer, although assessed on not more than full value, may be unlawfully discriminated against by undervaluation of property of the same class belonging to others. Raymond v. Chicago Union Traction Co., 207 U. S. 20. This may be true, although the discrimination is practiced through the action of different officials. Greene v. Louisville & Interurban R. R. Co., 244 U. S. 499."

Cooley, Taxation, in a note cites, at page 257, to sustain the text, a quotation in Kirby v. Shaw, 19 Pa. 258, 260, the following from Mill, Pol. Econ. book 5, c. 2, § 2:

"Equality of taxation, as a maximum of taxation, means equality of sacrifice. It means appropriating the contributions of each person towards the expenses of government, so that he shall feel neither more nor less inconvenience from his share of the payment than every other person experiences from his."

And in a note to page 256 the author quotes from People v. Whyler, 41 Cal. 351, 355, as follows:

"A tax is equal and uniform, which reaches and bears with the like burden upon all the property within the given district, county, etc. It bears the like burden, when the valuation of each parcel is ascertained in the same mode—the mode prescribed by law—and when it is subject to the same rate of taxation as other property within the district, county, etc."

It thus becomes apparent that it is immaterial whether personal property constitutes a class or parcel, as distinguished from real estate as another class or parcel. The rule is perhaps as well stated as anywhere in one of the paragraphs of the syllabus in Greene v. Louisville & Interurban R. R. Co., as follows:

"Discrimination resulting from an assessment of the intangible property of a railroad corporation by the board of valuation and assessment at 75 per cent. of its actual value while the property of individuals and other

classes of corporations, taxed at the same rate, is generally and systematically assessed by other and independent taxing authorities of the state at not more than 60 per cent. of actual value, is violative of the provisions of the Kentucky Constitution requiring uniform taxation in proportion to value and an identical rate as between corporate and individual property."

There is no merit in the attack on the master's finding on the ground that evidence was not given as to the valuation on which taxes were levied on personal property.

[6] The master found the taxable value of plaintiff's property for the year 1920 to be as determined by the tax commission. He refused to say that body, in reaching the result obtained by it, acted arbitrarily, or adopted or followed improper or erroneous methods of determining valuation. The plaintiff excepts to the finding of the master in the respects above named. In reaching the valuation for that year the tax commission took that for the year 1919 and added increases and betterments. The record fails to show affirmatively what depreciation, if any, was made, or that current indebtedness was deducted from credits in arriving at the increase in valuation over that of 1919. There is, I think, some haziness as to just how the commission reached a result, but a valuation was fixed after consideration of elements affecting plaintiff's property. In some prior year it fixed a valuation on such property, and the valuation so reached was for the next year made the starting point in determining what should be the assessed valuation for such succeeding year. This mode of procedure, as I understand, was continued from year to year down to and including the year 1920. When Airway Electric Appliance Corp. v. Archer (D. C.) 279 Fed. 878 (a three-judge case), was before this court, a résumé of the powers conferred and duties imposed on the tax commission was made (pages 885, 886), and the conclusion was reached that the hearings and proceedings before it as provided by statute, although less formal, are substantially as exhaustive as those imposed on a duly organized court of record in the trial of cases.

The Legislature contemplated and expressly provided that the records and files of the commission should be so perfectly kept as to show the history of the action taken in each proceeding before it and the mode and manner of reaching the result obtained. The taxpayer is entitled to learn, and in common fairness is entitled to know from such records and files, the details as to how the result is obtained which fixes the value of his property for taxing purposes. The plaintiff offered no evidence as to how the tax commission originally determined the valuation of its property or how such determination was made for any year prior to 1920. The master therefore assumed properly enough that the commission had acted rightfully in all such prior years in reaching its conclusion. Being a quasi judicial body, every presumption is in favor of the propriety of its action for the year 1920 and for preceding years. Louisville Trust Co. v. Stone, 107 Fed. at page 308, 46 C. C. A. 299 (C. C. A. 6); Mechem, Public Officers, § 579. In view of the state of the record, I am not prepared to say the master was not justified in finding the plaintiff's property to have been assessed for the year 1920 at its money value.

I do not wish to be understood as holding that a taxpayer may not, by appropriate proceedings, test out the correctness of valuations fixed by the tax commission and overthrow them, if they be erroneous, and it may be that the rule announced in 26 R. C. L. § 312, p. 355, and cases cited, touching statutory provisions relating to the assessment of taxes, is applicable in an attack on results obtained by the tax commission, but the issues presented in this case do not require a consideration of that matter.

The report of the master is affirmed, and all exceptions thereto are overruled.